**In re ESTATE OF Donald J. AIELLO, Deceased.**

**Appeal of David J. Aiello.**

Superior Court of Pennsylvania.

Submitted Feb. 8, 2010.

Filed March 30, 2010.

David J. Aiello, appellant, Pro Se.

Guy C. Fustine, Erie, for appellee.

BEFORE: PANELLA, ALLEN, and LAZARUS, JJ.

OPINION BY LAZARUS, J.:

¶ 1 David J. Aiello appeals from the order of the Court of Common Pleas of Cameron/Elk County, Orphans' Court Division dated December 31, 2008,[1] sustain-

---

1. Aiello's Notice of Appeal states that he appeals from the order of court dated May 8,

ing in part and overruling in part the amended objections[2] of Maria A. Aiello[3] to the First and Final Account of David J. Aiello, Executor of the Will of Donald J. Aiello, Deceased. We affirm.

¶ 2 Donald J. Aiello (hereinafter "Donald" or "decedent") died on March 27, 1977 leaving a Will dated March 3, 1969. He left his entire estate to his wife, Maria A. Aiello (hereinafter "Maria"), appellee herein, and named her as Executrix of his Will. Maria was not knowledgeable as to decedent's financial and business affairs and English was her second language. Thus, she accepted the advice of her brother-in-law, appellant David Aiello (hereinafter "David" or "Executor"), who was named as successor Executor in the Will, and renounced her right to serve in favor of David. Letters Testamentary were issued to David on April 6, 1977.

¶ 3 At his death, Donald owned interests in at least two business ventures. The first, Ridgway Cable Television (hereinafter "RCT"), was owned by decedent in equal shares with his brothers, David and Victor. Donald also owned 1,012 shares of common stock and 746 shares of preferred stock in St. Mary's Pressed Metals, Inc. (hereinafter "St. Mary's"), which amounted to 76% of the company's issued and outstanding common and preferred stock. In addition, Donald and David owned a two-acre parcel of land in Ridgway Township, Elk County, Pennsylvania as tenants-in-common.

¶ 4 Upon petition by Maria, the Honorable Vernon D. Roof directed David to file an account of his administration of Donald's estate by order dated June 6, 2000.[4] The account was filed on July 31, 2000 and Maria subsequently filed objections to the account.

¶ 5 In her objections, Maria raised numerous allegations of self-dealing and breach of fiduciary duty on the part of the Executor. The trial court agreed, sustaining all but one of the objections.[5] First, the court concluded that David had failed, generally, to preserve and protect the estate records and property and surcharged him $25,000. Next, the court found that David had redeemed the decedent's shares in RCT for $200,000 less than their fair market value without court approval. In doing so, he increased his own interest in

2009. However, that order denies exceptions filed by Aiello to the order dated December 31, 2008. Under the Orphans' Court Rules, exceptions are akin to post-trial motions. *See* Pa.O.C.R. 7.1(g)(Exceptions shall be the exclusive procedure for review by the Orphans' Court of a final order, decree or adjudication). Thus, the order from which Aiello appeals is actually the order of December 31, 2008. *See Commonwealth v. Chamberlain*, 442 Pa.Super. 12, 658 A.2d 395, 396 (1995)(order denying post-sentence motions acts to finalize judgment of sentence for appeal purposes, thus appeal is taken from judgment of sentence, not order denying post-sentence motions).

2. Pa.O.C.R. 6.10 provides for the filing of "objections" by parties in interest to fiduciary accounts filed with the Clerk of the Orphans' Court. For reasons unknown, Maria Aiello erroneously styled her filing as "exceptions" rather than "objections." For the sake of clarity, we will refer to Maria's pleading as "objections."

3. Maria A. Aiello is also referred to as "Marie A. Aiello" in numerous court documents. However, at trial, she identified herself as "Maria" and we will refer to her as such.

4. Judge Roof passed away on June 2, 2002 and the matter was reassigned to the Honorable Richard A. Masson.

5. Maria asserted that David converted the proceeds of certificates of deposit maintained in trust for the benefit of the decedent's children, who were minors at the time of their father's death. The trial court found that no competent evidence was presented to support those claims.

RCT from a 1/3 share to 1/2 share. Less than three years later, RCT was sold for $1.5 million. Had David not previously redeemed the estate's shares, the estate would have received $500,000 at the time of sale, rather than the $200,000 it received upon redemption of its shares. The trial court found that David violated his fiduciary obligation by assisting RCT in acquiring the decedent's interest at a discounted value and later benefiting personally from the sale of RCT at an increased price. As a result, the trial court imposed a surcharge of $300,000, plus interest from the date of sale.

¶ 6 The trial court further determined that, six months after the decedent's death, David entered into an agreement for the sale of all but 18 shares of the estate's interest in St. Mary's Pressed Metals, Inc., to a group of individuals that included David himself as well as John M. Feeney, Jr., an attorney hired by David to represent the estate. This was done without the approval of the court. Thus, the court concluded that the transaction was void and directed that the shares transferred to David be maintained in a constructive trust for the benefit of Maria.

¶ 7 The trial court next determined that, subsequent to the above sale of St. Mary's stock, David loaned the sum of $250,000 from the estate to St. Mary's. Payments on the loan were made sporadically, until August 14, 1991, when a check from St. Mary's in the amount of $125,000 was presented by David to Maria. The check was marked "paid in full" despite the fact that St. Mary's still owed an additional $49,268.12 on the loan. The trial court found that Maria accepted this check on the advice of David, who remained her primary financial advisor. The court further found that David was also a creditor of St. Mary's but, unlike the estate, was paid in full on all loans he had made to the company. Thus, the court imposed a surcharge in the amount of the balance of the loan, $49,268.12, plus interest from August 14, 1991.

¶ 8 Next, the trial court determined that Maria, on David's suggestion, loaned the sum of $50,000 to Salberg Auto Wreckers, a company in which David owned a 50% interest. To effectuate that loan, David wrote a check from the estate to Maria, who deposited the check and then signed a second check to Salberg Auto on May 8, 1981. Although David informed Maria that the investment was a sound one, Salberg Auto was ultimately sold in 1990 for $65,000, which resulted in a loss of $18,428.25 to Maria. The trial court found that appellant had engaged in self-dealing and surcharged him in the amount of $18,428.25.

¶ 9 Finally, the trial court determined that David's conveyance to himself, individually, of the decedent's interest in the Ridgway Township property was void and subjected it to a constructive trust for the benefit of Maria Aiello.

¶ 10 In his Pa.R.A.P. 1925(b) statement, filed by counsel, Appellant raised a number of issues. However, his *pro se* brief raises only three, which are as follows:

WHETHER THE TRIAL COURT ERRED IN FAILING TO HOLD THAT THE DOCTRINE OF LACHES WAS A COMPLETE DEFENSE TO THE APPELLEE'S CLAIMS AND THAT LACHES COULD NOT BE A DEFENSE BECAUSE ADMINISTRATION OF THE ESTATE HAD NOT BEEN FORMALLY CLOSED; WHEREAS IN MOST IF NOT ALL CASES WHERE LACHES HAS BEEN APPLIED IN ESTATE MATTERS, THERE HAS BEEN NO FORMAL TERMINATION OF THE ADMINISTRATION OF THE ESTATE[?]

WHETHER THE TRIAL COURT ERRED BY THE APPELLEE SEEKING TO QUESTION OR RESCIND TRANSACTIONS WHICH ARE AT THE MOST VOIDABLE[?]

WHETHER THE TRIAL COURT ERRED IN THE CONSIDERATION OF THE EVIDENCE BY EFFECTIVELY PUTTING THE BURDEN OF PROOF ON THE APPELLANT IN MANY INSTANCES, EITHER IMPLICITLY OR EXPLICITLY, IN CONSIDERING THE EVIDENCE PERTINENT TO THE VARIOUS CLAIMS[?]

Brief of Appellant, at 2. We will address these three claims in the order presented.

¶ 11 When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the trial court's factual findings are supported by the evidence. *In re Estate of Geniviva*, 450 Pa.Super. 54, 675 A.2d 306, 310 (Pa.Super.1996). Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, this Court will not reverse the trial court's credibility determinations absent an abuse of discretion. *Id.*

¶ 12 David first asserts that the trial court erred in failing to find Maria's claims barred by the doctrine of laches. Laches is an equitable doctrine which bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. *In re Estate of Devine*, 910 A.2d 699, 702 (Pa.Super.2006). In order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and, b) prejudice to the respondents resulting from the delay. *Id.* The question of laches is factual and is determined by examining the circum-

stances of each case. *Id.* Prejudice in the context of a claim of laches means that the party must change his position to his detriment in order to invoke laches. *Id.* Furthermore, laches is an equitable doctrine that should not be applied in favor of a person who has failed to take required action on his own. *Id.*

¶ 13 Here, David asserts that the active administration of the estate ended many years ago. He claims that Maria's twenty year delay in petitioning for an estate accounting was detrimental to him in that bank and other records have been lost, memories have faded and his ability to piece together the specifics of his administration has been generally impeded. He cites numerous cases in which laches has been applied in dismissing accounting proceedings. *See, e.g., Cannon Estate*, 330 Pa. 513, 199 A. 135 (1938); *Wallace Estate*, 299 Pa. 333, 149 A. 473 (1930).

¶ 14 The trial court concluded that David failed to prove that he had "changed his position [to his detriment] as a result of the delay." Trial Court Opinion, 12/31/08, at 12. Furthermore, the court found that David continued to actively administer the estate for many years after decedent's death. For example, in 1997 he signed a deed, in his capacity as executor, transferring a parcel of property owned by the decedent. *Id.* at 9. He signed liquor license renewals for a bar owned by the decedent in his capacity as executor until 1999, when the bar was sold. *Id.* at 21. Additionally, there are 18 shares of St. Mary's common stock that continue to be held in the name of the estate. *Id.* at 8, 21.

¶ 15 Upon review of the record, we find no error in the trial court's determination that laches does not bar Maria's claims in this case. As stated above, laches is an equitable doctrine which bars re-

lief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. *Devine, supra,* at 702. However, "he who seeks equity must do equity." *Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184, 188 (1988). A party seeking equitable relief must come before the court with clean hands. *Mudd v. Nosker Lumber, Inc.,* 443 Pa.Super. 483, 662 A.2d 660, 663 (1995). A court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. *Terraciano v. Commonwealth Department of Transportation,* 562 Pa. 60, 753 A.2d 233, 238 (2000). We find those principles applicable to the matter at hand. Although Maria waited approximately twenty years to bring this matter before the court, David's actions in this case require that he not be allowed to benefit from the delay. The evidence shows that Maria was unsophisticated in financial matters and relied heavily on her brother-in-law's advice, trusting him to act in her best interests. However, David repeatedly breached his fiduciary duty as executor, engaging in numerous transactions that had the effect of enriching himself to the detriment of the estate and, by extension, Maria, the sole beneficiary of the estate. Furthermore, if David had long ago completed the administration of the estate as he claims, he could have filed an interim or final account, the confirmation of which would have barred any claims against him for transactions covered by the account. This he did not do. For these reasons, David's first claim has no merit.

¶ 16 Next, David claims that "the trial court erred by the appellee seeking [sic] to question or rescind transactions which are at the most voidable." Brief of Appellant, at 2. Although inartfully stated, we presume that the appellant means to assert that the trial court erred when it found the transfer of: (1) 125.5 shares of St. Mary's stock to David Aiello; and (2) the decedent's interest in the Ridgway Township property to be voidable and, as such, subjected the stock and title to the real estate to a constructive trust for the benefit of Maria.

¶ 17 Maria asserts in her brief that David did not raise this issue in his Rule 1925(b) statement and, accordingly, it is waived. A review of the Rule 1925(b) statement reveals that David raised the following issue with regard *only* to the transaction involving St. Mary's Pressed Metals, Inc.:

> "m. The Court erred in voiding the sale transaction as to [David] where the respondent cannot be put back in the same position he was in when the transaction occurred because of the passage of so much time and the occurrence of so many intervening events."

Pa.R.A.P. 1925(b) Statement of Matters Complained Of On Appeal, 6/30/09, at 6. Accordingly, we will address this issue only to the extent that it was raised in David's Rule 1925(b) statement. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998)(any issues not raised in a 1925(b) statement will be deemed waived on appeal).

¶ 18 Section 3356 of the Probate, Estates and Fiduciaries Code provides as follows:

> In addition to any right conferred by a governing instrument, if any, the personal representative, in his individual capacity, may bid for, purchase, take a mortgage on, lease, or take by exchange, real or personal property belonging to the estate, **subject, however, to the approval of the court,** and under such terms and conditions and after such rea-

sonable notice to parties in interest as it shall direct.

20 Pa.C.S.A. § 3356 (emphasis added). Under this provision, notice to the estate's beneficiaries may not substitute for disclosure to the court. *In re Estate of Frey,* 693 A.2d 1349, 1353 (Pa.Super.1997). The statute unequivocally states that the court must be notified and that the transaction must be made in compliance with such terms and conditions as the court deems necessary to ensure the integrity of the estate. *Id.* Failure by a personal representative to obtain court approval for a sale in which he is an interested party may result in surcharge. *See generally In re Estate of Frey, supra; In re Estate of Dobson,* 490 Pa. 476, 417 A.2d 138 (1980)(finding conflict of interest and directing imposition of surcharge against executor who used improper method to calculate value of decedent's shares in S corporation, in which corporation executor's wife was director, officer and stockholder). Furthermore, our Supreme Court has held that the purchase by an executor at his own sale of shares of stock belonging to his decedent's estate is voidable at the instance of beneficiaries under the will of the decedent on the grounds of public policy. *Pomeroy v. Bushong,* 317 Pa. 459, 177 A. 10 (1935). As discussed above, we do not find persuasive David's argument that the passage of time must serve to prohibit Maria from complaining of his self-dealing.

¶ 19 Finally, David alleges that the trial court erred in placing upon him the burden of proof with respect to certain of Maria's claims. We find this claim to be meritless. Our Supreme Court stated in *In re Estate of Stetson,* 463 Pa. 64, 345 A.2d 679 (1975):

In general, one who seeks to surcharge a [fiduciary] bears the burden of proving that the [fiduciary] breached an applica-

ble fiduciary duty. However, when a beneficiary has succeeded in proving that the [fiduciary] has committed a breach of duty and that a related loss has occurred, we believe that the burden of persuasion ought to shift to the [fiduciary] to prove, as a matter of defense, that the loss would have occurred in the absence of a breach of duty. We believe that, as between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach of duty.

*Id.* at 690 (citations omitted).

¶ 20 Here, Maria presented ample evidence for the trial court to find that David breached his fiduciary duty to the estate. Specifically, the evidence showed that: (1) David engaged in numerous transactions involving estate assets; (2) these transactions were undertaken without first obtaining court approval; (3) David also had a personal interest in these assets; and (4) the transactions resulted in pecuniary losses to the estate. Moreover, David was unable to show that these losses would have occurred had he not engaged in these self-dealing transactions. Thus, we find no error in the trial court's allocation of the burden of proof.

¶ 21 Order affirmed.