J-A03001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF MARY L. BECHTEL, DECEASED AND LARRY E. BECHTEL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| DONALD R. BECHTEL AND MICHAEL T. BECHTEL | |
| Appellants | No. 1287 MDA 2014 |

Appeal from the Order Entered July 2, 2014
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s): 2209-1033

BEFORE: MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED MAY 06, 2015**

Appellants, Donald R. Bechtel and Michael T. Bechtel, appeal from the July 2, 2014 orphans' court order, imposing a surcharge of $17,230.40 against Donald[1] for the breach of his fiduciary duty as attorney-in-fact for his mother, Mary L. Bechtel (Decedent), entered on remand from a prior decision of this Court. After careful review, we reverse and remand for further proceedings consistent with this memorandum.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] We refer to most of the parties in this appeal by their first name because their surname is the same.

A prior panel of this Court noted the facts and procedural history as follows.

> On April 9, 1996, as a result of injuries she had sustained in a serious automobile accident, the Decedent executed a Power of Attorney ("POA") naming her son, Donald, as her attorney-in-fact, a designation which remained in effect until the day of her death. Pursuant to the authority granted by the POA, Donald managed the Decedent's finances, paying her bills and depositing any income into her bank account[s, including her Mid Penn Bank checking account]. Donald and his wife, Donna, to whom Donald had apparently delegated some of his duties, were responsible for writing hundreds of checks on behalf of the Decedent and at the Decedent's request.
>
> …
>
> On October 23, 2009, the Decedent died testate and was survived by [her three sons,] Donald, Michael and Larry [Bechtel, a residual beneficiary under Decedent's Will]. Shortly thereafter, on November 5, 2009, Donald and Michael were appointed coexecutors of the Decedent's Estate as provided in the Decedent's [] Will [] dated January 4, 2008. …

Orphans' Court Opinion, 12/21/2012, at 2-3.

*In re Estate of Bechtel*, 92 A.3d 833, 835-836 (Pa. Super. 2014).

Larry, on behalf of the Estate of Mary L. Bechtel (Estate), filed objections to Donald's account of Decedent's Mid Penn Bank checking account. From 1996 until 2000, only Decedent and Donald, as her attorney-in-fact, were able to issue checks from the account. On February 7, 2000, Donna Bechtel, Donald's wife, was added as an authorized signatory to the

- 2 -

account.  *Id.* at 836 n.2.  On March 26, 2002, Decedent added Donald and

Donna to the checking account as joint owners with the right of survivorship.

*Id.*

> On September 30, 2011, Donald filed an [a]ccount
> with the orphans' court for the period from 1996 to
> 2009.  The [a]ccount showed [over 2,000] deposits
> and withdrawals for the Decedent's Mid Penn Bank
> checking account for the years 1996-2009, and
> included 36 checks with no identified payee.  [From
> 1996-2009, there were 1,048 itemized expenses,
> including 1,018 checks.]  The checks without payees,
> according to year, are as follows:  1999—four
> checks; 2000—ten checks; 2001—nine checks;
> 2002—ten checks; 2003—two checks; and 2009—
> one check.  The largest unaccounted-for check was
> Check Number 605, written on July 13, 1999, for
> $10,000.  The orphans' court sustained Larry's
> objections to the Account, and surcharged Donald
> $17,230.40—the total of the 36 checks—for breach
> of fiduciary duty.

*Id.* at 837-838.  In imposing said surcharge, the orphans' court focused on

three of the 36 checks with no identified payee.  Namely, the

aforementioned check number 605 for $10,000.00, check number 625,

dated October 6, 1999, for $2,790.00, and check number 698, dated

September 11, 2000, for $400.00.  The orphans' court found as follows.

> Donald breached his fiduciary duty as the Decedent's
> attorney-in-fact in that he failed to "[k]eep full and
> accurate record[s] of all actions, receipts and
> disbursements on behalf of the principal."  20
> Pa.C.S. § 5601(e)(4).  The testimony at the hearing
> established that Donald and/or Donna had, while
> preparing the [Decedent's] Homestead for sale,
> inadvertently destroyed several years' worth of
> financial records relating to Donald's representation
> of the Decedent.  A thorough review of the record

shows that Donald could not account for the disbursement of at least thirty-six (36) checks written while he was acting as the Decedent's attorney-in-fact. By this Court's tally, the total of the disbursements represented by these missing checks was $17,245.40,[2] and it is that amount for which Donald will be surcharged.

Orphans' Court Opinion, 12/21/2012, at 4. The orphans' court also dismissed Donald and Michael's request for counsel fees and costs. **Bechtel**, **supra** at 837. Donald and Michael appealed to this Court.

A prior panel of this Court reversed and remanded, instructing the orphans' court to evaluate the sufficiency of the testimony presented by Donald and the witnesses who testified on his behalf. **Id.** at 839-840. Specifically, we directed the orphans' court to analyze the 1999 checks and evidence under the standard set forth in **In re Strickler's Estate**, 47 A.2d 134, 135 (Pa. 1946), and to utilize Section 5601(e)(4) for the evidence and checks issued from 2000 through 2009.[3] **Id.** at 842. This Court noted certain evidence that the orphans' court did not discuss in connection with

---

[2] In response to Donald and Michael's motion for post-trial relief, the orphans' court amended the amount of the surcharge to $17,230.40 to correct a mathematical error. **Id.** at 837.

[3] This Court explained that the effective date of Section 5601(e), which codified certain fiduciary duties of an attorney-in-fact, was December 12, 1999. Prior to that date, **Strickler** established the duty of a fiduciary to justify disbursements claimed by the fiduciary. Therefore, Donald, acting as Decedent's attorney-in-fact from 1996 until 2009, had to comply with the **Strickler** standard for any checks issued prior to December 12, 1999 and with Section 5601(e)(4) thereafter. **Id.** at 839.

the surcharge. *See id.* at 840-842. Specifically, Appellants introduced a chart that tracked gifts the Decedent made to her four sons[4] between July 1996 and March 2003. *Id.* at 841. The chart showed that from 1996 to 2003, Decedent gave gifts totaling $273,500.00 to her sons, mostly in $10,000.00 amounts. *Id.* Decedent's granddaughter, Stacy Fenice, also testified that Decedent gave her a $10,000.00 gift in May 1998 to assist her in purchasing a townhouse. *Id.* at 842. There was also evidence of Decedent loaning her family tens of thousands of dollars. *Id.* Regarding the two other checks numbered 625 and 698, Appellants admitted into evidence, without objection, a letter from counsel for Donald and Michael identifying the payees for those checks. *Id.* at 840. Specifically, check number 625 for $2,790.00 was made payable to J.H. Rissinger & Sons for new windows, and check number 698 was for $400.00 to Eugene Adams, a dentist, for dentures. *Id.* This Court explained that we were reversing and remanding the case to the orphans' court as follows.

> In light of the unrebutted testimony discussed above, and specifically the Decedent's history of gift-giving to her sons, mostly in $10,000.00 amounts, between the years 1996 and 2003, we conclude the orphans' court judge committed error in failing to apply *Strickler*, *supra*, and evaluate the evidence in order to answer the question of whether the unaccounted-for checks issued in 1999 represent a breach of fiduciary duty.

---

[4] In addition to Donald, Michael, and Larry, Decedent had a fourth son, Harold Bechtel, who is now deceased.

Furthermore, the orphans' court judge imposed a surcharge for every unaccounted-for check written after December 12, 1999. The judge provided no analysis as to how Donald failed to perform his fiduciary duty under Section 5601(e)(4), given that of 850 itemized expenses for the ten year period from 2000 through 2009, there were only 32 checks at issue, and the court specifically found that the records were inadvertently destroyed.[10] Again, we conclude the orphans' court judge committed an error of law.

Accordingly, based on our review of the record, we reverse the order of the orphans' court regarding the surcharge and remand for the court to use the appropriate standards and analyze the evidence thereunder.

---

[10] We note that after March 26, 2002, the date the Decedent changed the ownership of the Mid Penn Bank checking account, any remaining amounts in that account did not pass under her Will, but passed directly to Donald and Donna as joint owners with the right of survivorship.

*Id.* at 842 (footnote in original). Further, we "conclude[d] that the motion [for counsel fees and costs] was timely and the orphans' court erred in finding that it was without jurisdiction to entertain the request for counsel fees." *Id.* at 843. No one filed a petition for allowance of appeal with our Supreme Court.

Following remand, the orphans' court, without conducting any further hearings or receiving any additional evidence, issued its July 3, 2014 memorandum opinion and order that again imposed the $17,230.40 surcharge on Donald. Orphans' Court Opinion, 7/3/14, at 4-5. The orphans'

court reasoned that Donald and Michael "had the burden to justify all disbursements through the use of proper vouchers or equivalent proof in support of each disbursement[, and a] thorough review of the record reveals that [they] had issued [36] checks which were not properly explained or documented[.]" *Id.* at 2. Specifically, regarding the $10,000.00 check (number 605), the orphans' court found there was no evidence "as to who received this money, nor was there any documentary evidence provided to support the argument that [c]heck number 605 was similar to prior gifts. Nor was there evidence to support a conclusion that the check 'must have been written to one of Decedent's children or relatives.'" *Id.* at 3. With respect to check numbers 625 and 698, for $2,790.00 and $400.00, respectively, the orphans' court concluded that the letter from Appellants' attorney, which set forth the purported payees of said checks, "did not provide any documentary evidence in support of this statement. Since this letter was not prepared under oath, it does not even rise to the level of the accountant's unsupported testimony [under **Strickler**]." *Id.* Further, the orphans' court concluded that Donald had a fiduciary duty to maintain the financial records, which he violated "by either personally destroying [the records], or allowing [them] to be [inadvertently] destroyed by another[,] after Decedent passed away. Thus, a surcharge was proper because Donald failed to exercise common prudence, skill or caution in the performance of his fiduciary duty." *Id.* at 5, *citing In re Miller's Estate*, 26 A.2d 320, 321

(Pa. 1942). The orphans' court scheduled a hearing to consider Appellants' post-trial motion for witness fees, costs of suit, and reasonable attorneys' fees, but cancelled the hearing after Appellants again filed a timely appeal with this court.[5]

On appeal, Appellants present the following issue for our review.

> Whether the orphans' court erred in ordering the surcharge of Donald R. Bechtel on remand in the amount of $17,230.40[?]

Appellants' Brief at 4.

We begin by noting our deferential standard of review.

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.
>
> When the [orphans'] court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It

_____

[5] The orphans' court and Appellants have complied with Pennsylvania Rule of Appellate Procedure 1925. The orphans' court's September 16, 2014 1925(a) opinion directs this Court to its July 3, 2014 memorandum opinion.

is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous …. If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Estate of Warden*, 2 A.3d 565, 571 (Pa. Super. 2010) (citations and quotations omitted).

On remand, the orphans' court found that Appellants' testimony and evidence was not sufficient to justify each of the 36 unidentified checks contained in Appellants' accounting of Decedent's Mid Penn Bank checking account. Orphans' Court Opinion, 7/3/14, at 2. The orphans' court concluded that the failure to explain the expenditures was a breach of Donald's fiduciary duty. *Id.* at 4. As a result, it imposed a surcharge on Donald in the amount of those checks. *Id.* at 5. Upon careful review, we are again constrained to reverse because the orphans' court erred in applying *Strickler* and Section 5601(e).

An orphans' court may surcharge an attorney-in-fact for the loss caused by a breach of his fiduciary duty. ***In re Shahan***, 631 A.2d 1298, 1303 (Pa. Super. 1993), *appeal denied*, 644 A.2d 1202 (Pa. 1994). "Surcharge is the penalty for failure to exercise common prudence, common skill and common caution in the performance of the fiduciary's duty and is imposed to compensate beneficiaries for loss caused by the fiduciary's want of due care. … [I]f the fiduciary exercise[s] judgment in good faith, he will have done his duty." ***In re Miller's Estate***, ***supra***.

> In general, one who seeks to surcharge a [fiduciary] bears the burden of proving that the [fiduciary] breached an applicable fiduciary duty. However, when a beneficiary has succeeded in proving that the [fiduciary] has committed a breach of duty and that a related loss has occurred, we believe that the burden of persuasion ought to shift to the [fiduciary] to prove, as a matter of defense, that the loss would have occurred in the absence of a breach of duty. We believe that, as between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach of duty.

***In re Estate of Aiello***, 993 A.2d 283, 289 (Pa. Super. 2010), *quoting*, ***In re Estate of Stetson***, 345 A.2d 679, 690 (Pa. 1975) (citations and footnote omitted).

An attorney-in-fact has the fiduciary duty to, among other things, account for distributions he makes independently on behalf of the principal, but there is no duty to account for distributions made by the principal herself. ***Bechtel***, ***supra*** at 839; 20 Pa.C.S.A. § 5601(e)(4). Prior to the

- 10 -

effective date of Section 5601(e)(4) in December 1999, "*In re Strickler's Estate*, *supra*, established the duty of a fiduciary to justify disbursements **claimed by him** [through '[p]roper vouchers or equivalent proof']. Under *Strickler*, '[a]ccountant's unsupported testimony is generally insufficient.' Accordingly, the orphans' court must evaluate the sufficiency of the accountant's testimony and evidence." *Bechtel*, *supra* at 839 (emphasis added, citations omitted). "Once the fiduciary has validated the disbursements, the burden then shifts to the objector to disprove them." *Id.* (citation omitted). After the December 12, 1999 effective date of Section 5601(e), "[a]n agent acting under a power of attorney has a fiduciary relationship with the principal [and], the fiduciary relationship includes the duty to[, among others,] … (4) Keep a full and accurate record of all actions, receipts and disbursements **on behalf of the principal**." 20 Pa.C.S.A. § 5601(e)(4) (emphasis added), *deleted effective 1/1/15 and moved to new 20 Pa.C.S.A. § 5601.3(b)(4) ("Agent's duties"); see* Pa. H.B. 1429, 198th Gen. Assem., Reg. Sess. (2014), Pa. Legis. Serv. Act No. 2014-95. Therefore, the checks issued prior to December 12, 1999 should have been reviewed in accordance with *Strickler*, with Larry's initial burden, as the objector, being to supply sufficient evidence the checks were issued by Donald. Under *Strickler*, Donald has a fiduciary duty to account only for those checks that he issued on Decedent's behalf. *Bechtel*, *supra*.

In this case, the orphans' court erred when applying these standards. The orphans' court's conclusion that Larry, as the objector, met his initial burden of proving that Donald breached his fiduciary duty of keeping a full and accurate record of all independent distributions that **Donald made on Decedent's behalf,** was not supported by competent and adequate evidence. Specifically, the evidence does not show that Donald, in his capacity as Decedent's attorney-in-fact, independently issued any of the 36 unidentified checks on Decedent's behalf, as opposed to Decedent issuing the checks herself.

Regarding check number 605 for $10,000.00, issued on July 13, 1999, Appellants presented unrebutted testimony that Decedent signed the check as a gift. Appellants introduced a chart documenting Decedent's history of gift-giving to her sons, mostly in $10,000.00 amounts, from her Prudential checking account.

> [T]he chart showed Donald received $1,000.00 on July 13, 1996; $10,000.00 in December of 1997, 1998, 1999, 2000, 2001, and 2002, and $6,000.00 on March 20, 2003. Harold received $10,000.00 in December of 1997 and 1998, two separate $10,000.00 amounts in December of 2000, and $10,000.00 in December of 2001 and 2002. Michael received $4,500 on July 13, 1996, $10,000.00 in December of 1996, 1997, 1998, 1999, 2000, 2001, and 2002, and $6,000.00 on March 20, 2003. … Decedent gave her granddaughter, Stacy, a check for $10,000 on May 6, 1998.

***Bechtel***, ***supra*** at 841. Donna testified that Decedent wrote and signed all of these checks. N.T., 7/30/12, at 53.

In contrast, there was no evidence that anyone other than Decedent signed the checks. Donna testified that she did not sign check 605 because she was not an authorized signatory on the Mid Penn account until 2000. *Id.* at 52. Likewise, Donald testified that he did not remember signing check 605. *Id.* at 108-109. In addition, both Donna and Donald maintained that they did not make gifts on Decedent's behalf. *Id.* at 61, 108. Therefore, under the *Strickler* standard, there was inadequate evidence from which the orphans' court could conclude that Donald made the $10,000.00 disbursement. *Bechtel*, *supra* at 839. Instead, the unrebutted evidence showed that Decedent, not Donald, issued check 605 as a gift. *Id.* at 839, 842. Absent any contrary evidence provided by Larry, there is no evidentiary support for the conclusion that Donald had a fiduciary duty to account for the $10,000.00 check. *Warden*, *supra*.

The same is true for check number 625 for $2,790 issued on October 6, 1999. The evidence shows that Decedent, as opposed to Donald, made this disbursement because the evidence clearly established that check 625 was issued to J.H. Rissinger & Sons for new windows at one of Decedent's rental properties. N.T., 7/30/12, at 21, 190, Appellants' Exhibit 9, 2/17/11 Letter; *Bechtel*, *supra* at 840. This was a justified expenditure. *See Bechtel*, *supra* at 839. Larry did not object to this evidence or introduce any evidence to the contrary. *See id.* at 840. The orphans' court erred in refusing to consider this unrebutted evidence, admitted at the hearing with

no objection. **See id.** Similarly, Larry did not present any evidence regarding the two other checks with unidentified payees issued in 1999.[6] Therefore, the trial court erred in concluding that Donald had a fiduciary duty to account for these four checks.[7] **See Aiello**, **supra**.

The third check specifically discussed by the orphans' court was check number 698, issued on September 11, 2000, for $400.00. Similar to the previously discussed check 625, the evidence established that check 698 was issued to Dr. Eugene Adams, a dentist, as payment for Decedent's dentures. N.T., 7/30/12, at 21, 190, Appellants' Exhibit 9, 2/17/11 Letter; **Bechtel**, **supra** at 840. The orphans' court again erred in rejecting this evidence. **See Bechtel**, **supra** at 839. Larry did not object or introduce any adverse evidence tending to show that Donald, rather than Decedent, issued this check. **See id.** Therefore, the evidence was likewise inadequate to conclude that Donald breached a fiduciary duty by failing to account for this check. **See generally** 20 Pa.C.S.A. § 5601(e)(4).

The orphans' court did not specifically discuss any of the remaining 31 checks with unidentified payees issued from 2000 through 2009. As with the other checks, Larry failed to offer any evidence that Donald or Donna

---

[6] Check number 594 issued on June 11, 1999 for $50.00 and number 620 issued on September 8, 1999 for $105.00.

[7] We note that Larry did not object to any of the 189 other checks issued from the start of 1996 through the end of 1999, for $73,077.24.

issued any of these 31 checks.  **See Aiello**, **supra**.  Although ten of the checks, totaling $1,912.71, were issued after March 26, 2002, when Donald and Donna were joint owners of the account, Donna testified that they only used the account for Decedent's expenses, and Larry did not present any evidence to the contrary.  N.T., 7/30/12, at 59.

In addition, the remaining 31 unaccounted for checks are *de minimis* in amount and the evidence shows they were inadvertently, not intentionally, destroyed by Donna when she was in the process of cleaning out her house in anticipation of moving.  Orphans' Court Opinion, 7/3/14, at 4-5.  From 2000 to 2009, the account shows 850 itemized expenses, including 825 checks totaling $277,232.27.  In contrast, the 31 checks at issue amounted to $3,885.40, or less than one-and-a-half percent of the value of all checks issued.  In light of the 818 other legitimate, uncontested transactions and the *de minimis* nature of the contested checks, we conclude that there was no evidentiary support in the record to support the finding that Donald breached any fiduciary duty or that a breach resulted in a loss to the Estate.  **See Bechtel**, **supra** at 842; **Warden**, **supra**; **Aiello**, **supra**.

Based on the foregoing, we conclude the orphans' court erred when it imposed a surcharge on Donald.  As Donald and Michael are now the prevailing parties, they may seek attorneys' fees.  **See generally** 42 Pa.C.S.A. § 2503.  Accordingly, we reverse the orphans' court July 2, 2014

order, and remand for further proceedings on only Appellants' post-trial motion for witness fees, costs of suit, and reasonable attorneys' fees.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2015