J-S44037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ESTATE OF ROSEMARY MEHALL | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  MARLENE R. WESOLOWSKY, FORMER EXECUTRIX AND HEIR IN THE ABOVE-NAMED ESTATE | No. 266 WDA 2015 |

Appeal from the Order January 26, 2015
In the Court of Common Pleas of Fayette County
Orphans' Court at No(s): 137 OF 2004

BEFORE:  LAZARUS, J., STABILE, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 4, 2015**

Marlene R. Wesolowsky, former Executrix of the Will of Rosemary Mehall, Deceased ("Wesolowsky"), appeals from the order of the Court of Common Pleas of Fayette County that, *inter alia*, approves the amended petition for distribution and imposes various surcharges upon Wesolowsky for various actions taken by her during her tenure as executrix.  Upon careful review, we affirm in part and reverse in part.

The Orphans' Court set forth the factual and procedural history of this matter as follows:

> This matter has a long, convoluted, and very contentious history[.]  Letters Testamentary were granted to [Wesolowksy], a daughter and heir of the Decedent, on February 24, 2004, and Decedent's Last Will and Testament were admitted to probate on that same date.  Ms. Wesolowsky filed the Estate Inventory more than four years later on April 3, 2008, listing a 1995 Ford Taurus automobile, a 2002 Ford Windstar minivan, coins, bills

and stamps in a safety deposit box. Decedent's remaining children and heirs filed objections dated July 23, 2008, to Ms. Wesolowsky's Inventory[, account,] and proposed schedule of distribution, claiming that many of Decedent's assets had disappeared, and Ms. Wesolowsky had distributed other assets to herself in a self-serving manner.

Following several days of testimony, [the Orphans' Court] referred several issues to the District Attorney of Fayette County for investigation and, if appropriate, prosecution. Those issues involved non-probate assets. Ms. Wesolowsky was eventually charged with, and convicted on April 10, 2014 of, the crime of Failure to Make Required Disposition of Funds in an amount greater than $2000.00[.] Ms. Wesolowsky was sentenced . . . on May 8, 2014 to nine to twenty-three months of confinement. On June 23, 2013, [the Orphans' Court] removed Ms. Wesolowsky as Executrix and appointed Attorney Vincent Roskovensky as Administrator D.B.N.C.T.A. of the Estate. [The] Court directed the Administrator D.B.N.C.T.A. to file an Amended Inventory and Schedule of Distribution so as to resolve the remaining objections of the heirs.

Orphans' Court Opinion, filed 1/27/15, at 1-2.

The Orphans' Court also directed Attorney Roskovensky to perform an investigation into the actions taken by Wesolowsky as executrix, as well as the status of various assets, and to submit a report detailing his findings.[1]

_____

[1] We note with concern the fact that Attorney Roskovensky, in his capacity as Administrator D.B.N.C.T.A., was represented by Jason F. Adams, Esquire, who had also served as counsel to Wesolowsky during the time she was vigorously defending herself against the Appellees' objections to her account and inventory. Given the acrimonious nature of these proceedings, which actually resulted in a criminal conviction against Wesolowsky, it would seem to have presented a clear conflict of interest for Attorney Adams to represent the supposedly impartial Administrator D.B.N.C.T.A., whose tasks included investigating the actions of Attorney Adams' former client. This untenable situation should have raised red flags for both the court and Attorney Adams, both of whom we would caution to exercise greater care in avoiding

*(Footnote Continued Next Page)*

Attorney Roskovensky submitted his report on March 8, 2013, and Appellees filed eighty objections to his findings. After a hearing held on May 20, 2014, the court issued an opinion and decree *nisi* on January 26, 2015. Wesolowsky filed a timely notice of appeal on February 11, 2015, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Wesolowsky raises the following issues for our review:

Did the Honorable Court in its Decree *Nisi*, dated January 26, 2015, commit an abuse of discretion and errors of fact/law in surcharging [Wesolowsky] an amount of $327,630.54 in each and every of the following particulars:

a. The amount of $24,457.60 . . . for expenses incurred with the Decedent's home.

b. The amount of $271,622 . . . for the Stocks of Anheuser Busch, CMS Energy Corp, Del Monte Foods, Goodyear Tire & Rubber, Host Marriot Corporation, Lucent Technologies and Teletech Holdings.

c. The amount of $31,550.96 . . . for the 1st Federal Certificate of Deposit.

d. The amount of $10,695.00 . . . for her Executrix Commission.

Brief of Appellant, at 4.

We begin by noting our standard of review:

The findings of a judge of the [O]rphans' [C]ourt [D]ivision, sitting without a jury, must be accorded the same weight and

*(Footnote Continued)* ────────────────

future conflicts of interest such as that which appears to have been glaringly present in this matter.

- 3 -

effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

***In re Estate of Bechtel***, 92 A.3d 833, 837 (Pa. Super. 2014).

In this case, each of Wesolowsky's appellate claims involve the Orphans' Court's imposition of a surcharge against her.

In general, one who seeks to surcharge a fiduciary bears the burden of proving that the fiduciary breached an applicable fiduciary duty. However, when a beneficiary has succeeded in proving that the fiduciary has committed a breach of duty and that a related loss has occurred, we believe that the burden of persuasion ought to shift to the fiduciary to prove, as a matter of defense, that the loss would have occurred in the absence of a breach of duty. We believe that, as between innocent beneficiaries and a defaulting fiduciary, the latter should bear the risk of uncertainty as to the consequences of its breach of duty.

***In re Estate of Aiello***, 993 A.2d 283, 289 (Pa. Super. 2010).

With respect to the fiduciary responsibilities of an executor, this Court has previously noted that

[a]n executor's duty is to take custody of the estate and to administer it so as to preserve and protect the property for distribution to the proper persons within a reasonable time. In the discharge of this duty, an executor is regarded as a fiduciary and is held to the highest degree of good faith.

*In re Estate of Campbell*, 692 A.2d 1098, 1101-02 (Pa. Super. 1997) (citations and quotation marks omitted).

Wesolowsky first claims that the Orphans' Court erred in surcharging her for expenses incurred in connection with the upkeep of the Decedent's home in the time between her death in 2004 and the ultimate sale of the property in 2008. Wesolowsky asserts that the court lacked sufficient evidence to conclude that, "had the property been listed with a real estate agent, the sale would have been completed by the end of September 2004." Brief of Appellant, at 8, citing Orphans' Court Opinion, filed 1/27/15, at 3. Wesolowsky argues that attempts to purchase the property by two family members, as well as an unrelated third-party, delayed the listing of the property with a realtor and that the delay did not violate her fiduciary obligations.

Appellees acknowledge that there were multiple inquiries regarding the purchase of the property, but that Wesolowsky failed to take any actions to follow up on those inquiries. Thus, the mere fact of the inquiries is immaterial to a determination as to a reasonable time frame for disposition of the property.

In its opinion, the Orphans' Court noted that Attorney Roskovensky, the Administrator D.B.N.C.T.A., determined that "161 days (5-6 months) would have been a reasonable time period" in which to sell the residence, assuming it had been listed with a realtor. *Id.* at 3. The court concluded

that Wesolowsky's attempts to sell the house privately resulted in a "protracted delay" in its sale. Accordingly, the court surcharged her in the amount of $24,457.60, the amount of all utility, maintenance, insurance and tax bills incurred after October 1, 2004. Upon review of the record, we are constrained to conclude that the Orphans' Court's surcharge is not supported by evidence of record.

When seeking to impose a surcharge against an executor for the mismanagement of an estate, those who seek the surcharge bear the burden of proving the executor's wrongdoing. *Estate of Geniviva*, 675 A.2d 306, 311 (Pa. Super. 1996). Nevertheless, where a significant discrepancy appears on the face of the record, the burden shifts to the executor to present exculpatory evidence and thereby avoid the surcharge. *Id.* Preliminarily, we find that there does exist on the face of the record a "significant discrepancy" with regard to Wesolowsky's handling of the sale of the Decedent's real estate. The court concluded, and we agree, that a period of almost four years was excessive, absent a reasonable explanation. Accordingly, the burden of proof shifted to Wesolowsky to provide such an explanation as to why she should not be surcharged for the expenses incurred as a result of the delay. In this regard, the court was not persuaded by Wesolowsky's reliance on her alleged attempts to sell the home privately, and we find no abuse of discretion in that finding, and in the propriety of a surcharge for unnecessary expenses.

We disagree, however, that the amount of the surcharge imposed by the court was supported by competent evidence of record. In levying its surcharge, the court relied on the determination of the Administrator D.B.N.C.T.A. contained in his petition for final distribution filed on August 26, 2013. In that petition, Attorney Roskovensky stated that he "has been informed, based upon his investigation, that the average time for marketing would have been approximately 161 days[.]"[2] Petition, 8/26/13, at ¶ 4. However, the Administrator provided no information as to how he concluded this span of time to be a reasonable one. The Administrator provided no expert report or evidence as to the length of time comparable properties remained on the market before being sold. The court adopted this seemingly arbitrary time-frame, providing no explanation as to its rationale in doing so. Although it appears clear that the property remained unsold for longer than necessary, there is no record support for the court's conclusion that 161 days was a reasonable time within which to complete the sale of the Decedent's home. Accordingly, we are constrained to conclude that the court committed an abuse of discretion with regard to the imposition of the related $24,457.60 surcharge.

_____

[2] The Administrator ultimately concluded that, because of the attempts made to purchase the property privately and the issues surrounding the sewage system, Wesolowsky should be given credit for expenses paid through the year 2005.

Wesolowsky next claims that the court erred in surcharging her in the amount of $271,622.58, representing the purported value of certain stock owned by the Decedent. Wesolowsky asserts that the court erred in placing "great reliance" upon Exhibit N to the Appellees' objections to the Administrator's report, which consists of three documents provided by Edward Jones Investments detailing the securities owned by the Decedent and held by Edward Jones at the time of her death. Wesolowsky claims that the documents were neither authenticated nor properly made part of the record and, thus, the conclusion drawn by the court in reliance thereon was in error. Wesolowsky also claims that the stock in question was, in fact, contained in the two brokerage accounts listed on Schedule G to the Inheritance Tax Return filed by the estate and that the accounts were non-probate assets payable on death to the Decedent's children.

The Appellees argue that only two of three Edward Jones investment accounts owned by the Decedent were included in the inventory or the inheritance tax return. Appellees assert that the third, unreported account ("Third Account") contains 3000 shares of Anheuser Busch stock; two shares each of CMS energy Corp., Lucent Technologies and Teletech Holdings; three shares each of Del Monte Foods and Host Marriott Corp; and one share of Goodyear Tire and Rubber. Appellees note that the stocks in question were, however, reported on the Decedent's 2004 U.S. income tax return and, thus, should have been included in the estate. ***See*** Objections to Administrator's

Report, 10/21/13, at Exhibit F (Schedule D, Capital Gains and Losses). Appellees further claim that the total value of the stocks is $325,947.09, based upon "Exhibit O attached to the Objections," which contains printouts of web pages purporting to show the value of those stocks as of August 2014.

The trial court accepted the Appellees' valuation of the missing stock and imposed a surcharge upon Wesolowsky in the amount of $271,622.58, representing the 2014 value of the stocks, minus her distributive share.

We begin by noting that Wesolowsky did not raise any objection in the lower court to the Appellees' reliance on Exhibit N, nor does she actually dispute the accuracy of the information contained in the documents. Moreover, the same information contained in Exhibit N is also reflected in the Decedent's 2004 tax return, which Wesolowsky has not objected to. Accordingly, we find that the Orphans' Court did not abuse its discretion in relying on the documents presented in Exhibit N to the Appellees' objections.

Our review of the record indicates that the Appellees are correct in their assertion that the Third Account did, in fact, exist and was not reported on the inheritance tax return, the inventory or the account. However, the record also demonstrates that the stock contained in the Third Account was sold on March 9, 2004 and garnered proceeds totaling $2,966.94. This sale is reflected in Schedule D of the Decedent's 2004 federal income tax return, *see* Objections to Administrator's Report, 10/21/13, at Exhibit F, as well as

in Exhibit "N" attached to Appellees' Brief in Support of Objections to the Administrator's Report and Petition, filed on August 14, 2014. We note that the values attributed to the stock in both the Edward Jones statement and the tax return appear to be perplexingly low.[3] However, as an error-correcting appellate court, we are limited to considering only the materials in the certified record when resolving an issue. *See Commonwealth v. McBride*, 957 A.2d 752, 757 (Pa. Super. 2008). The only record evidence of the value of the stock contained in the Third Account shows a total value of $2,966.94.

Because the stock was sold less than two months after the Decedent's death, the Orphans' Court abused its discretion in surcharging Wesolowsky for the 2014 value of the stock in question.[4] Rather, the court should only have surcharged her for the amount of the actual sale proceeds, $2,966.94, which were not included in the inventory or account.

_____

[3] For example, our own research indicates that the closing value of one share of Anheuser Busch stock on March 9, 2004, the date Wesolowsky sold the stock, was $43.35. Yahoo Finance, Historical Prices, http://finance.yahoo.com/q/hp?s=YHOO&a=02&b=9&c=2004&d=02&e=10& f=2004&g=d (visited 10/8/15). The Edward Jones summary and the Decedent's income tax return show a total sales price of $2,890.05 for 3,000 shares of that same stock.

[4] We note that the Appellees did not raise the issue of the imposition of a constructive trust on the sale proceeds of the stock, nor is there any evidence of record as to the ultimate disposition of the proceeds of said sale.

Next, Wesolowsky challenges the court's imposition of a surcharge in the amount of $31,550.96, representing the value of certificate of deposit no. 446699 from First Federal Bank. Wesolowsky claims that she was a joint owner of the certificate and, thus, the proceeds of the account were not the property of the estate and not required to be included in the inventory, account or inheritance tax return. In support of her claim, she cites the report of the Administrator D.B.N.C.T.A., in which he indicated that he reviewed the account's signature card and determined that Wesolowsky was added as a joint owner on January 22, 1999.

The Appellees acknowledge that a signature card containing Wesolowsky's name exists, but that the signature cards for Decedent's accounts "contain multiple errors including an incorrect social security number for one objector, dates written over, information scratched out and illegible entries." Objections and Response to Administrator's Report to the Court, 6/26/13, at 112. Appellees also assert that they "were told that signature cards back then 'were allowed to leave the bank' and several people who made entries on the cards are now deceased so the information could not be confirmed as factual." *Id.* at 112-13.

Our review of the record reveals a copy of the original First Federal certificate of deposit no. 446699, titled in the names of Frank R. Mehall, Sr. or Rosemary Mehall. *See* Hearing, June 15, 2012, at Petitioner's Ex. 55. The record also contains a letter from First Federal employee Jennifer

George indicating that certificate no. 446699 was issued in the names of Frank R. Mehall, Sr. or Rosemary Mehall and was closed on July 19, 2004 by Wesolowsky, with the proceeds transferred to an account titled in the names of "Marlene Wesolowsky or Thomas Wesolowsky." Brief in Support of Objections, 8/14/14, at Exhibit Q. However, the certified record contains no documentary evidence provided by Wesolowsky to support her contention that she was a co-owner of the certificate at the time of Decedent's death; nor is the Administrator's statement to that effect supported by any evidence. Thus, we can discern no abuse of discretion on the part of the Orphans' Court in concluding that the certificate in question was an asset of the Decedent's estate and surcharging Wesolowky accordingly.

Finally, Wesolowsky challenges the Orphans' Court's surcharge in the amount of $10,695, representing her executrix's commission. Wesolowsky claims she has already fully repaid her commission to the estate.

The Orphans' Court, in its opinion, stated the following:

> It is the [c]ourt's understanding that the entire amount of $10,695.00 previously disbursed to [Wesolowsky] was her Executrix commission has already been returned to the Estate accounts by Ms. Wesolowsky, but if the [c]ourt's understanding on this issue is mistaken, Ms. Wesolowsky should be surcharged for any amount that has not yet been repaid[.]

Orphans' Court Opinion, filed 1/27/15, at 11. Appellees, in their brief, do not dispute that Wesolowsky has, indeed, repaid her full commission to the estate. Accordingly, this claim is moot.

Order affirmed in part and reversed in part. Case remanded to Orphans' Court for proceedings consistent with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/4/2015