**In the Matter of the ESTATE OF John W. FREY.**

**Appeal of Michael J. FREY and Darlien Frey, Executors of the Estate of John W. Frey.**

Superior Court of Pennsylvania.

Argued April 15, 1997.

Filed May 8, 1997.

Earl R. Etzweiler, Harrisburg, for appellants.

Frances H. Del Duca, Carlisle, for Ruth and Joseph Frey, participating parties.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

We are called upon to decide whether the co-executors of the estate of John W. Frey were properly removed as administrators of his estate. Although probate issues such as this are necessarily delicate due to the intricate familial relationships that they involve, we find that the record evidence amply supports the trial court's conclusion that Michael and Darlien Frey mismanaged the estate and engaged in self-dealing. We therefore affirm the order of the trial court.

On November 25, 1991, John W. Frey died testate, naming in his will his second wife, Darlien, and his son, Michael, co-executors of his estate. The estate consisted of three residential properties, bank accounts totaling approximately $15,885.18 and two vehicles. Darlien was willed a life interest in one of the

homes, the balance of a joint banking account and one-half of the residuary estate. The remainder of the estate was devised in equal shares to the six Frey children of John W. Frey and his former wife.

Prior to a final accounting of the estate, several bank account balances were transferred into Darlien's name. Additionally, Darlien's life estate interest in the residence left to her was deeded into a fee simple interest. This transfer was accomplished without court approval.

In February of 1992, Michael and his brother Richard, desirous of purchasing one of the estate homes, had one of the residences appraised by a certified Dauphin County appraiser. At the time, the property was valued at $44,500. Fourteen months later, the lending institution that was contemplating giving the brothers a mortgage on the property conducted an independent appraisal of the property, which valued the property at $75,000. The substantial difference between the two appraisals was due to repairs and improvements made by the brothers in the interim. Soon thereafter, the home was sold by Michael and Darlien, as co-executors, to Michael and Richard for $44,-500. Again, the executors neither sought nor received court approval for the sale.

As a result of these questionable transfers, as well as a general speculation that their father's estate was being mismanaged, Ruth and Joseph Frey, two of the six Frey children, filed objections to the final accounting which was filed by the co-executors on November 12, 1993. Based upon the objections, the trial court appointed an independent auditor, Stephen J. Hogg, Esquire, to take testimony, make findings of fact and proposed conclusions of law.

On April 18, 1994, the auditor's hearing, at which Ruth, Michael and Richard Frey testified, was conducted. Two months thereafter, Attorney Hogg filed his report. While some of the objections were denied, the report proposed, *inter alia*, that the transfer in fee simple to Darlien of her former life interest be revoked and that the transfer to Michael and Richard of one of the other estate properties be disallowed. Additionally, the auditor directed that the property sold to Michael and Richard be re-appraised and ordered that the brothers pay the estate the difference between the appraised value and the sale price.

On April 5, 1995, the auditor's report was confirmed by the Honorable Harold E. Sheely of the Court of Common Pleas of Cumberland County. Three and one-half months later, after ascertaining that the co-executors had not complied with the court order confirming the report, a citation was issued directing the co-executors to show cause why such compliance had not been forthcoming.

Pursuant to the citation, a hearing was held on December 4, 1995. Testimony was taken from Michael, Darlien, Ruth and Richard Frey. Michael admitted that he had not voided the property transfers as directed in the auditor's report. Further, he testified that the property sold to him and his brother had been appraised for a third time and that the current value of the house was estimated to be $90,000. Additionally, when questioned about the particulars of his administration of his father's estate, Michael stated that (1) he did not know whether there was an estate checking account; (2) he paid estate expenses from his personal accounts, expecting to be reimbursed; (3) rental income from the third estate property was paid in cash and that receipts were not given; and, (4) he did not know how to complete the administration of the estate.

Darlien Frey, co-executor and surviving spouse, testified that she did not know whether there was an estate checking account and that she was not involved in the estate finances. For example, although she signed the deed transfers in her capacity as co-executor, she did not arrange or investigate the transfers and was unaware of the significantly higher bank appraisal conducted just prior to the sale of the home bought by Michael and Richard. Darlien also testified that she did not know the amount of the estate's rental incomes or whether the incomes were deposited or invested.

Based upon this testimony, Judge Sheely issued an order on May 2, 1996, which removed Michael and Darlien as co-executors of the estate. Additionally, calculating the difference between the first and second appraisals, the court directed that Michael and Richard pay a surcharge of $30,000 to the estate. Richard then filed a petition to open and/or strike the judgment and Darlien filed a notice of appeal to this Court.

Thereafter, on June 3, 1996, Judge Sheely issued an amended order intended to correct several errors and ambiguities present in his original order. As to the $30,000 surcharge assessed against Michael and Richard, the court amended both the amount and the payees to reflect a $30,500 surcharge against Michael and Darlien, as co-executors. The original judgment was marked satisfied. Finally, the court directed that, in the event any inconsistencies existed between the order and the auditor's report, the order was to control.

Darlien then praeciped to discontinue the appeal of the May 21 order. Darlien and Michael presently appeal from the June 4, 1996, amended order of court.

■ Removal of estate executors, while within the sound discretion of the trial court, is a drastic action that should only be taken when it is evident that the estate is actually endangered and that court intervention is necessary in order to prevent further waste and/or mismanagement of the estate assets. *See, e.g., In Re Francis Edward McGillick Foundation,* 537 Pa. 194, 200–01, 642 A.2d 467, 470 (1994); *Matter of Estate of Velott,* 365 Pa.Super. 313, 317–18, 529 A.2d 525, 527 (1987). This is especially true in situations in which a testator has selected those persons he or she wishes to serve as executors. *Id.*

When determining whether an executor should be removed from his or her duties, a trial court must consult the Decedents, Estates and Fiduciaries Code, 20 Pa.C.S.A. § 101 *et seq.* Specifically, § 3182 of the Code provides five bases upon which an executor may be removed, four of which are particular in nature and the last of which is residual. *In toto,* the section reads:

### § 3182. Grounds for removal

The court shall have exclusive power to remove a personal representative when he:

(1) is wasting or mismanaging the estate, or is likely to become insolvent, or has failed to perform any duty imposed by law; or

(2) has been adjudged a lunatic, a habitual drunkard, or a weakminded person; or

(3) has become incompetent to discharge the duties of his office because of sickness or physical or mental incapacity and his incompetence is likely to continue to the injury of the estate; or

(4) has removed from the Commonwealth or has ceased to have a known place of residence therein, without furnishing such security or added security as the court shall direct; or

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

20 Pa.C.S.A. § 3182.

Presently, the trial court concluded that Michael and Darlien had mismanaged the estate and that, due to such mismanagement and the admissions that the duo had no plans as to how to complete administration, the interests of the estate would continue to be jeopardized by their ongoing representation. Thus, the court relied upon subsections (1) and (5) as justifying removal.

■ With respect to the removal of Michael, we can readily state that the trial court did not abuse its discretion in determining that his stewardship of the estate was faulty. Ample evidence was produced which demonstrated that, in the over four years of his tenure, Michael did not take even the threshold steps which are necessary to ensure the effective administration of an estate.

For example, Michael was unaware that, prior to distribution, an executor must make an inventory of the estate assets and pay the

estate debts from a separately maintained checking account. Not only was Michael unaware whether a separate banking account existed, but he transferred his father's personal property to Darlien before settling the estate's business and he maintained abysmal, at best, estate records.

Moreover, although Michael had the property which he later purchased with Richard appraised, this valuation was done over a year before the sale and prior to extensive renovations which added significant value to the home. Such self-dealing is violative of 20 Pa.C.S.A. § 3356 which mandates, as an express condition precedent to any purchase of estate property by a personal representative, court approval.

Michael contends that his actions do not amount to either mismanagement or self-dealing. In support of this audacious averment, Michael states that the estate bills were, in fact, paid and that he notified his siblings of his intent to purchase estate property.

█ Initially, we note that, in addition to merely paying estate bills, an executor must keep separate estate accounts and thorough records. Instead, Michael commingled his funds with estate funds and kept such haphazard records that it is unclear whether an exact accounting can ever be forthcoming.

█ As to his co-purchase of estate property, even conceding that he notified his siblings of the impending purchase, we find such notice to be legally insufficient due to the reliance upon the earlier $44,500 appraisal to establish that the property was being purchased for its fair market value. His siblings, some of whom live out of state, were unaware of the improvements made post-appraisal but pre-purchase. As stated previously, the improvements caused the estimated value of the home to increase by $30,500.

Finally, § 3356 does not provide that notice to the estate's beneficiaries may substitute for disclosure to the court. Rather, the section unequivocally states that the court must be notified and that the purchase, if any, must be made in compliance with such terms and conditions as the court deems necessary to ensure the integrity of the estate.

For these reasons, we hold that the trial court did not abuse its discretion in ordering the removal of Michael Frey as co-executor of his father's estate. Michael acted in flagrant disregard for a number of procedural mandates that are intended to ensure the effective management of an estate. Whether his actions were intentional or negligent is immaterial to this disposition, for the fact remains that a pattern of mismanagement was evident which was not likely to be rectified absent Michael's removal.

█ We now consider whether the court abused its discretion in ordering the removal of Darlien Frey as co-executor of her late husband's estate. Darlien asserts that the court erred in determining that she did not actively participate in the estate's administration and that such insufficient attention resulted in waste and placed the further effective management of the estate in peril. Because the record refutes these contentions, we reject Darlien's argument and affirm the order of the trial court.

█ One's appointment as an estate executor confers an honor and trust and, commensurately, the duty to oversee the administration with competence so as to avoid compromising the probity of the estate. At a minimum, this requires one to investigate estate transactions to determine their soundness prior to approval. An executor's signature connotes acceptance and approval of a transaction and should not be considered an afterthought or procedural nicety.

This said, Darlien's own testimony at the court hearing established that her acts of misfeasance damaged the estate and that, given her four-year history of passive agreement, final administration of the estate would be unlikely with Darlien at the helm.

For example, Darlien admitted that she: (1) did not know the extent of the estate

assets at the time of her husband's death; (2) was unaware whether the estate maintained separate banking accounts; (3) had nothing to do with the particulars of the sale of estate property to Michael and Richard, and instead merely signed the deed that the brothers prepared; and (4) had no involvement with the estate's rental incomes.

Moreover, in addition to this spattering of inattentive behavior, we are reminded of the several incidents of active participation which reflect questionable, at best, decision-making on Darlien's part. The first instance which comes to mind is the transfer of her late husband's personal property and assets into her own name before an estate inventory was made. More egregious, however, was the transfer to Darlien in fee simple of the property which her husband had expressly willed to her as a life interest only.

Certainly, had her husband wished or intended for Darlien to own the property outright, he would have made such a provision in his will. Instead, the testator chose to confer a greater benefit upon his six children from a prior marriage while at the same time providing for the life comfort of his second spouse. As an heir, Darlien should have respected this wish. As an executor, Darlien was duty-bound to do so.

This evidence sufficiently supports the trial court's determination that Darlien's tenure as co-administrator was fraught with incompetence. Whether through ignorance, malfeasance or misfeasance, Darlien's actions amply demonstrated that she was not qualified to administer her late husband's estate.

We therefore uphold the order of the trial court removing Michael and Darlien Frey as co-executors of the estate of John W. Frey. Rather than evidencing an abuse of discretion, we find that the trial court acted prudently and that the facts of the instant case warranted such intervention.

■ In addition to challenging their removal as estate executors, Darlien and Michael argue that the trial court erred in assessing the $30,500 surcharge against them in their capacity as co-executors. As previously stated, this surcharge reflected the price differential between the amount that a parcel of estate property was sold for and the estimated value of the property at the time of the sale.

The former executors admit that a $30,500 differential exists and that the higher estimate is more reflective of the value of the house at the time it was sold. They also admit that, although statutorily required pursuant to 20 Pa.C.S.A. § 3356, court approval was neither sought nor granted. In spite of this, the duo contends that "the co-executors have merely breached the technical requirement of seeking Court approval for the agreed-upon purchase" and that "no objections were made that this price was too low and the sale, which was approved by all interested parties, did not cause a $30,500 loss to the estate." Appellants' brief at 36.

■ Failing to seek court approval prior to selling estate property to an administrator does not amount to a technical violation of one's fiduciary duty. The requirement that such a sale be pre-approved is designed to avoid even the appearance of impropriety and, more importantly, to ensure that those entrusted with the estate's assets are not tempted to benefit themselves to the heirs' detriment, thus frustrating the testator's wishes.

For these reasons, § 3356 provides that, rather then merely approving or disallowing such a sale as presented by the parties, the court may condition the sale upon any terms or conditions that it deems appropriate. Instantly, although Michael and Darlien boldly assert that "undoubtedly the Court would have approved the sale of said property to Richard Frey and Michael Frey at the value of $44,500.00," the trial court explicitly stated that such approval would not have been forthcoming. Appellants' brief at 37. Rather, the court held that it would not have relied upon the fourteen-month-old $44,500 estimate and would instead have ordered an appraisal to determine the current value of

the property. Slip op., 5/2/96 at 1. Indeed, such an appraisal was performed by the brothers' lending institution just prior to the sale, indicating a current value of $75,000. It is incredulous to suggest that, if presented with two such varying estimates, the court would have approved the former.

Moreover, we have already addressed appellants' argument that agreement among all interested parties mitigates their non-compliance. Such agreement is not authorized by statute and, in the instant matter, was unreliable due to the fact that the interested parties were only presented with the lower estimate and were told, incorrectly, that it represented the fair market value.

Having found appellants' arguments baseless, we affirm the order of the lower court directing the former co-executors to pay a $30,500 surcharge to the estate. The action and inaction, respectively, of Michael and Darlien Frey caused significantly undervalued estate property to be sold to Michael and Richard Frey. While appellants contend that the trial court provided the other heirs with a "windfall," it is evident that the court merely corrected a prior windfall bestowed upon Michael and Richard Frey which would not have occurred but for Michael and Darlien Frey's derelict actions.

Finally, we address appellants' contention that the trial court erred in simultaneously ordering that: (1) the sale of the home to Michael and Richard Frey be revoked; and (2) the former co-executors pay the estate the $30,500 it would have realized had court approval been sought prior to the sale. Appellants argue, in essence, that this amounts to a double penalty. While we agree that both forfeiture and a fine would result in an unwarranted benefit to the estate, we reject appellants' argument because appellants have misstated the substance of the trial court order.

The amended trial court order of June 3, 1996, from which the former co-executors presently appeal specifically provides that, should the order conflict in any respect with the auditor's report, the terms of the order are to control.

Instantly, the auditor's report proposed that the sale be disallowed and that a surcharge be assessed, while the court order only provided for a surcharge. Because the order never confirmed the auditor's suggestion that the sale be set aside, it is not clear whether an actual conflict exists.

In any event, simple application of the court's proviso leads to the conclusion that the sale to Michael and Richard has not been set aside. Rather, the sale to Michael and Richard remains undisturbed and Michael and Darlien are required to reimburse the estate. This is in keeping with the violation of fiduciary duties found, for otherwise Richard would be penalized and Darlien's actions would go unpunished.

In sum, we hold that the trial court did not abuse its discretion in removing Michael and Darlien Frey as co-executors of the estate of John W. Frey and in assessing a $30,500 surcharge against the former co-executors. The evidence sufficiently established that the estate had been mismanaged and was in peril of further harm should one or both executor remain in office. The surcharge merely made whole an estate ravaged by the Freys' mismanagement and malfeasance.

Order affirmed.