J-S14001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF MALCOLM R. FREY, JR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BRUCE M. FREY, ADMINISTRATOR | : | No. 1533 MDA 2020 |

Appeal from the Order Entered November 4, 2020
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  4095-0491

BEFORE:  BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                     **FILED JUNE 25, 2021**

Bruce M. Frey appeals from the order that removed him as Administrator CTA[1] of the estate of his father, Malcolm R. Frey, Jr.  We affirm.

The orphans' court offered the following summary of the underlying history:

> This case arises out of an estate created in 1995 that remains pending today.  Malcolm Frey ("Decedent") passed away on February 11, 1995 and on March 16, 1995 his son Bruce Frey ("Bruce") was appointed Administrator CTA.  Decedent's estate ("Estate") lists a property at 320 Highland Avenue, Kingston Township, Pennsylvania ("Property") as its primary asset.  Between 1995 and the present time the Estate never settled.  That is not to say it was inactive, for Bruce indisputably rented the Property, resided there for a time, and spent an undetermined value repairing and improving it.  Bruce kept little record of his income and expenses pertaining to the Property.

---

[1] An administrator CTA, or *cum testamento annexo*, is one "appointed by the court to carry out the provisions of a will when the testator has named no executor, or the executors named refuse, are incompetent to act, or have died before performing their duties and no qualified successor has been named." ADMINISTRATOR, Black's Law Dictionary (11th ed. 2019).

The docket itself remained inactive for nearly a quarter century. The first effort to progress the Estate toward a resolution did not occur until April 18, 2019 when Amy Frey ("Amy"), daughter of Decedent and sister of Bruce, filed a petition to remove Bruce as administrator of the estate. Judge Richard M. Hughes, III of the Luzerne County Orphans Court ("[orphans'] court") set a hearing date of May 22, 2019. The hearing was thereafter continued pending Bruce's completion of an Estate accounting, which he indeed filed on September 12, 2019. Amy subsequently filed a petition for a hearing on the accounting on January 6, 2020. Following a continuance, the [orphans'] court scheduled a hearing on March 10, 2020.

An order dated June 22, 2020 sustained Amy's preliminary objections to the accounting, directed Bruce to file an amended accounting within sixty days, and scheduled a hearing on the earlier petition to remove Bruce as administrator for September 8, 2020. The court specifically also noted that it found credible the testimony of former Property renters Michael Hoprich and Jan Villarante. Bruce filed an amended accounting on August 21, 2020 noting the lack of remaining documentation concerning rental income and most expenses. The [orphans'] court issued an order on November 4, 2020 removing Bruce Frey as administrator CTA and allowing any heir of the Decedent to petition for appointment as administrator of the estate.

Orphans' Court Opinion, 2/10/21, at 1-2 (footnote and unnecessary capitalization omitted).

Bruce filed a timely notice of appeal,[2] and both he and the orphans' court complied with Pa.R.A.P. 1925. Bruce presents the following questions for our consideration:

---

[2] The interlocutory order was immediately appealable as of right pursuant to Pa.R.A.P. 342(a)(5) ("An appeal may be taken as of right from the following orders of the Orphans' Court Division: . . . An order determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship[.]").

I.    Did the [orphans'] court abuse its discretion in failing to apply the doctrine of laches where knowledgeable heirs delayed in demanding an accounting for twenty-five (25) years?

II.    Did the [orphans'] court abuse its discretion in dismissing [Bruce] for his failure to complete the administration of the estate where there were no assets to administer or distribute on the date of death?

Bruce's brief at 1 (unnecessary capitalization omitted).

We begin with an examination of the applicable legal principles. The removal of an estate fiduciary is left to the discretion of the orphans' court, and we may not alter its determination absent an abuse of that discretion. *See*, *e.g.*, *In re Estate of Andrews*, 92 A.3d 1226, 1230 (Pa.Super. 2014). "An abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, or misapplication of law." *In re Estate of Tigue*, 926 A.2d 453, 456-57 (Pa.Super. 2007) (citations omitted).

This Court has observed that "[r]emoval of estate executors . . . is a drastic action that should only be taken when it is evident that the estate is actually endangered and that court intervention is necessary in order to prevent further waste and/or mismanagement of the estate assets." *Matter of Estate of Frey*,[3] 693 A.2d 1349, 1352 (Pa.Super. 1997). "This is especially

---

[3] Apparently, the Frey family involved in the instant appeal is not related to the Frey in this Court's prior decision. *See* Orphans' Court Opinion, 2/10/21, at 5.

true in situations in which a testator has selected those persons he or she wishes to serve as executors."[4]

> The grounds for removal of a personal representative are delineated in 20 Pa.C.S. § 3182. That statute allows the orphans' court to replace a personal representative when he or she "is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law" as well as "when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office." 20 Pa.C.S. § 3182(1), (5).

*Id*. at 1230.

"An executor is required to exercise the same degree of judgment that a reasonable person would exercise in the management of his own estate. This duty includes the responsibility to distribute the estate promptly." ***In re McCrea's Estate***, 380 A.2d 773, 775-76 (Pa. 1977) (citations omitted). ***See also In re Padezanin***, 937 A.2d 475, 85 (Pa.Super. 2007) (indicating that an executor has the duty "to preserve and protect the property for distribution to the proper persons within a reasonable time") (cleaned up).

After a thorough review of the pertinent law, the parties' briefs, and the certified record, we discern no abuse of discretion on the part of the orphans' court as to the issues raised in this appeal, and we affirm the order removing Bruce as Administrator CTA on the basis of the cogent and well-reasoned

---

[4] Bruce, as an administrator CTA, necessarily was not Decedent's chosen estate representative. Hence, his removal is not subject to this heightened reluctance.

- 4 -

opinion that the Honorable Richard M. Hughes, III, entered on February 10, 2021.

Specifically, Judge Hughes observed that Bruce admitted that, in twenty-five years as the estate fiduciary, he did nothing to perform his duty to settle Decedent's estate. **See** Orphans' Court Opinion, 2/10/21, at 6 (citing N.T., 3/10/20, at 25-26). Rather, Bruce took his siblings' renunciations of their right to be Administrator of the Estate as a renunciation of any right to the Property itself, and thereafter proceeded to treat it as his own, commingling funds from rental income and failing to keep records of money spent on improvements. **Id**. at 7-9. Based upon the evidence in the certified record, Judge Hughes reasonably concluded that "Bruce's twenty-five year term as Administrator CTA of the Estate has been long-delayed, abysmally mismanaged, and his continued term jeopardizes the Estate and any possible future conclusion." **Id**. at 10.

Finally, we observe that, in his laches argument, Bruce asserts that any distribution of the estate "will be subject to set-offs in favor of Bruce," and that his siblings are precluded by laches from challenging the lack of documentary evidence available at this juncture to prove the amounts that he spent on Property. **See** Bruce's brief at 7. However, those arguments speak not to the issue of his removal as administrator, but to the ultimate distribution and settlement of the Estate, issues that are not before us in this interlocutory appeal.

Accordingly, Bruce has failed to establish that the orphans' court rendered a decision based upon "bias, partiality, prejudice, ill-will, or misapplication of law." *In re Estate of Tigue*, *supra* at 456-57. As such, we discern no abuse of discretion warranting relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/25/2021

IN RE:                                      : IN THE COURT OF COMMON PLEAS
                                            :    OF LUZERNE COUNTY
ESTATE OF MALCOLM FREY, JR.,                 :
                                            :   ORPHANS' COURT DIVISION
Deceased                                    :
                                            :   NO.    4095-0491

FILED
02/10/2021 10:55:04 AM
REGISTER OF WILLS
LUZERNE COUNTY
PENNSYLVANIA
Inst. Num:          202102511

## OPINION ISSUED PURSUANT TO PA.R.A.P. 1925(a)

### I. Facts and Procedural Background

This case arises out of an estate created in 1995 that remains pending today. Malcolm Frey ("Decedent") passed away on February 11, 1995 and on March 16, 1995 his son Bruce Frey ("Bruce") was appointed Administrator CTA. Decedent's estate ("Estate") lists a property at 320 Highland Avenue, Kingston Township, Pennsylvania ("Property") as its primary asset. Between 1995 and the present time the Estate never settled. That is not to say it was inactive, for Bruce indisputably rented the Property, resided there for a time, and spent an undetermined value repairing and improving it. Bruce kept little record of his income and expenses pertaining to the Property.

The docket itself remained inactive for nearly a quarter century. The first effort to progress the Estate toward a resolution did not occur until April 18, 2019 when Amy Frey ("Amy"), daughter of Decedent and sister of Bruce filed a Petition to Remove Bruce as Administrator of the Estate.[1] Judge Richard M. Hughes, III of the Luzerne County Orphans Court ("Trial Court") set a hearing date of May 22, 2019. The hearing was thereafter continued pending Bruce's completion of an Estate accounting, which he indeed filed on September 12, 2019. Amy subsequently filed a Petition for a hearing on the accounting on January 6, 2020. Following a continuance, the Trial Court scheduled a hearing on March 10, 2020.

---

[1] The transcript identifies Amy Frey as "Amy Kozar."

1

An Order dated June 22, 2020 sustained Amy's preliminary objections to the accounting, directed Bruce to file an amended accounting within sixty days, and scheduled a hearing on the earlier Petition to Remove Bruce as Administrator for September 8, 2020. The Court specifically also noted that it found credible the testimony of former Property renters Michael Hoprich and Jan Villarante. Bruce filed an amended accounting on August 21, 2020 noting the lack of remaining documentation concerning rental income and most expenses. The Trial Court issued an Order on November 4, 2020 removing Bruce Frey as Administrator CTA and allowing any heir of the Decedent to petition for appointment as Administrator of the Estate.

Bruce appealed the Trial Court's November 4, 2020 Order to the Pennsylvania Superior Court on December 1, 2020. On December 7, 2020 the Trial Court directed Bruce to file a concise statement of errors on appeal ("Concise Statement of Errors") within thirty days. Bruce filed the ordered Concise Statement of Errors on January 5, 2021.

Plaintiff's Concise Statement of Errors are as follows:

1. Latches or Unreasonable Delay: The current Administrator was appointed in 1995 with full knowledge and approval of his siblings. After twenty-five (25) years have passed the beneficiaries now want an accounting and distribution of what they believe to be their beneficial share. Since his appointment, the Administrator has substantially increased the value of the home with their full knowledge and they now request a distribution of his efforts.

2. Estoppel: With the full knowledge of the heirs, the Administrator has greatly improved the value of the home by putting on a deck, shed, driveway, roof, kitchen bathroom, etc. For twenty-five (25) years no heir requested an accounting, and to reconstruct and

2

account for the monies expended to increase the value is impossible. To allow the heirs to now receive the benefit of his efforts is unreasonable.

3. The only asset arguably for distribution was the decedent's home which was included in the Inheritance Tax Return; that Return showed no net Estate. The debt against that asset remained solely in the name of the Administrator, therefore, creating no net asset to administer or to distribute. No objection was ever filed to the Inheritance Tax which was delivered, again, twenty-five (25) years ago. To this end the filing of a First and Final Account for the distribution of no assets would have been meaningless and does not amount to an error or which the Administrator should have been dismissed.

4. This matter could have been resolved twenty-five (25) years ago by conveyance of the asset to the creditor/Administrator. Unfortunately, the Mortgagee to whom the Administrator owed the balance required payment in full of the debt before any conveyance, or even, any rental was allowed. Since the creditor/Administrator did not have the capability of refinancing the home stayed in the name of the Estate.

## II. Legal Discussion

The General rule under Pa. R.A.P. 1925(a) entitled "Opinion in Support of Order" states:

> Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall within the period set forth in Pa.R.A.P. 1931(a)(1) file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

Pursuant to Pa. R.A.P. 1925(b),

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of errors complained of on appeal ("Statement").

3

Pa. R.A.P. 1925(b)(4)(ii) further states: "[t]he Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge."

Bruce focuses much of this Concise Statement of Errors on the allegedly inequitable fact of his various expenses done that increased the value of the estate and his siblings' lack of prosecution in the matter for twenty-five years. That the siblings did fail to pursue the action for so long does at least raise a question. Nonetheless, Bruce, not his siblings, accepted the duties of an Administrator and completion of the Estate was his responsibility, not his siblings' responsibility. An executor's duty includes "the responsibility to distribute the estate promptly." *In re McCrea's Estate*, 380 A.2d 773, 775-776 (Pa. 1977). "An executor's duty is to take custody of the estate and to administer it so as to preserve and protect the property for distribution to the proper persons within a reasonable time." *Matter of Estate of Campbell*, 692 A.2d 1098, 1101 (Pa. Super. 1997). An administrator c.t.a wields the same powers as an executor. *Sears v. Scranton Trust Company*, 77 A. 423, 426 (Pa. 1910). Bruce's attempt to place the burden on his siblings does not absolve his own duties. That his delay in concluding the Estate led to an alleged increase in value beyond insolvency is not their fault either. Bruce's custody of the estate, however delayed, may truly have benefitted the Estate's valuation – the positive effects of Bruce's custody are not the reasons the Trial Court removed Bruce as Administrator CTA.

The Trial Court removed Bruce as Administrator CTA of the Estate for the simple fact of his lengthy and admitted failure to make even cursory efforts at settling the Estate. In the process of his inaction, Bruce engaged in self-dealing and wholly neglected to make an accounting of his activities to the point where a complete proper accounting of this Estate may never be possible. When removing Bruce Frey as Administrator CTA the Trial Court relied upon its statutory

4

authority and a body of case law, most importantly a strikingly similar matter coincidentally known as the *Matter of Estate of Frey*.[2]

Preventing continued mismanagement of this Estate and protecting its future interest through the termination of its jeopardized status quo absolutely necessitated the Trial Court's discretionary exercise of removal. Statutorily, "[t]he court shall have exclusive power to remove a personal representative when he: (1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or . . . (5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office." 20 Pa. C.S.A. §3182. Despite labeling removal a "drastic action," the *Frey* Court recognizes its factual necessity reflected in the statute. *Matter of Estate of Frey*, 693 A.2d 1349, 1352 (Pa. Super. 1997). Such discretion to remove lies soundly with the trial court and will not be disturbed absent an abuse. *In re Estate of Andrews*, 92 A.3d 1226, 1230 (Pa. Super. 2014) (quoting *In re Estate of Mumma*, 41 A.3d 41, 49 (Pa. Super. 2012)). The factual scenario of the present matter far exceeds that in the earlier *Frey* matter in both duration and depth.

The Trial Court finds the earlier *Frey* matter instructive. In that case, upon the death of John W. Frey on November 25, 1991 his wife Darlien and his son Michael were named co-executors of the estate. Prior to the final accounting filed two years later, several account balances were transferred into Darlien's name and her life estate interest in the residence was transformed into a fee simple interest, all without court approval. *Matter of Estate of Frey*, 693 A.2d 1350-51 (Pa. Super. 1997). Meanwhile, a few months after John Frey's passing his sons Michael and Richard obtained an appraisal of one estate home for $44,500, engaged in repairs and improvements to the home, and promptly sold it to themselves for the same value - $44,500

---

[2] *Matter of Estate of Frey*, 693, A.2d 1349 (Pa. Super. 1997).

5

— despite it being reappraised at the time for $75,000.[3] Again, this sale occurred without court approval. *Id.,*at 1351. Following objections to the accounting by other Frey children and a court-ordered audit, interspersed with the co-executors' refusal to comply with court orders, the court removed Michael and Darlien as co-executors and surcharged them $30,500. *Id.,* at 1351-52. The Superior Court found that the trial court did not abuse its discretion because "[a]mple evidence was produced which demonstrated that, in the over four years of his tenure, Michael did not take even threshold steps which are necessary to ensure the effective administration of an estate." *Id.,* at 1352.

In the present Frey matter, the wholesale voiding of Bruce's responsibility to the Estate occurred far longer and to a greater extent than in the earlier *Frey* matter. Perhaps no other statement better summarizes the rudderless nature of this Estate than the very words of Bruce. The Administrator CTA, appointed to that position a quarter-century ago, openly admitted "I have never done anything to settle this Estate[.]" Transcript, p. 25-26. That Bruce further explained he believed the Estate settled at the time of his father's passing may in fact be true but does not absolve the point that the Estate remains open after so many years. Moreover, Bruce's credibility is not altogether consistent: he testified during the hearing that he lived in both Kingston (Pennsylvania) and Florida, while later unequivocally testifying that he "never lived in Kingston." Transcript, p. 22, 45.

The contention in this matter instead largely stems from a disputed legal interpretation and a resultant lack of accounting rather than a factual argument. The dispute creating this matter ultimately originated at the funeral of the siblings' father. Bruce obtained the signature of all his siblings, except Stephen, when he was appointed Administrator CTA in 1995. Transcript, p. 25-

---

[3] Michael and Darlien, as co-executors, officially sold the home to Michael and Richard. A later third appraisal valued the home at $90,000. *Frey* at 1351.

6

26. Amy clarifies that the paperwork consisted of renunciations. Transcript, p. 66. Bruce thereafter offered his siblings the Property but none of them wished to take it, resulting in Bruce paying each of his siblings $1,000.[4] Transcript, p. 21. At that point Bruce believed he owned the Property, a position he continues to hold. Transcript, p. 21, 47. Amy, believing she only signed a renunciation of her right to become the Administrator, denies that she or her siblings ever signed over their rights to the Property. Transcript, p. 61. What Bruce believes to be his siblings' renunciation to the Property was in fact their effective consent to his appointment as Administrator CTA. No evidence came before the Trial Court to show that Bruce's alleged $1,000 payment to his siblings constituted consideration for sole right to the Property.

Nonetheless, believing himself to own sole possession to the Property, Bruce embarked on a long period of renting the home marked with co-mingling of funds and meager record keeping. Jan Villarante testified that she rented the Property from 1996 until 2001 for $1,000 per month. Transcript, p. 15. Mark Hopprich testified that he rented the Property from November 2011 to January 2016 for $900 per month. Transcript, p. 9, 10. Although Bruce Frey cannot specifically recall these renters, he does not deny them either.[5] Transcript, p. 20. A personal representative "shall collect the rents and income from each asset in his possession until it is sold or distributed[.]" 20 Pa. C.S.A. §3311. Both Jan Villarante and Michael Hopprich testified they made the rental checks to Bruce. Transcript, p. 10, 16, 18. Michael Hopprich added that he mailed the checks to BMF Media. Transcript, p. 10. Bruce confirmed rental checks were sent to BMF Media, which he identifies as his business. Transcript, p. 20, 24, 45-46. He further admits that the incoming rental payments were not accounted and were funneled into BMF Media.

---

[4] Amy Kozar disputes that she ever even received the alleged $1,000 payment. Transcript, p. 66-67.
[5] There also seems to be at least one other renter whose identity could not be ascertained and who did not testify. Transcript, p. 69-70.

Transcript, p. 20-21, 24. Together, the two witnesses paid Bruce via BMF Media nearly $114,000. Transcript, p. 10, 17. Throughout the time of Jan Villarante and Michael Hopprich renting the Property, and apparently during Bruce's residence at the Property that began at least five years ago, Amy has never shared in the rental income. Transcript, p. 23, 63.

The Court finds Bruce's funneling of assets generated from the Estate into his personal company's account especially problematic. Such co-mingling will almost assuredly render any future accurate accounting of the Estate impossible. "[A]n executor must keep separate estate accounts and thorough records. Instead, Michael commingled his funds with estate funds and kept such haphazard records that it is unclear whether an exact account can ever be forthcoming." *Matter of Estate of Frey*, 693 A.2d 1349, 1353 (Pa. Super. 1997). Courts have indeed recognized the dangers of such co-mingling of funds for well more than a century. In 1900 the Superior Court affirmed the removal of an administratrix who "deposited money of the estate in her name, and has not kept proper and intelligible accounts in regards to the affairs of the estate." *In re Perrett's Estate*, 14 Pa. Super. 611, 615 (Pa. Super. 1900).[6] The *Frey* Court labeled that similar sale of property to the co-executor "self-dealing." *Matter of Estate of Frey*, 693 A.2d 1349, 1353 (Pa. Super. 1997). In that case, the co-executor and his brother spent monies repairing and improving the home and ultimately reaped the benefit because of poor record keeping that the court describes as "abysmal." *Id.*

Abysmal would generously characterize the record-keeping in the present matter. Operating under the posited presumption that he owned the Property, a position that again does not obviate the fact of his inaction and self-dealing, Bruce spent considerable sums on the

---

[6] The *Perrett* Court further opined that the appellant's own testimony "shows that she has commingled the trust funds with her own and that her accounts, (while perhaps intelligible to herself), are not such accounts as should be kept by one having the custody of trust funds." *In re Perrett's Estate*, 14 Pa. Super. 611, 616 (Pa. Super. 1900).

8

Property. He testified to numerous repairs, including: the roof, the bathroom, a car port, filling the lawn, foundation work, painting, enlarging the driveway, replacing the hot water heater, repairing the deck, redoing the carpet and installing vinyl in the kitchen, bathroom and laundry. Transcript, p. 35-39. Bruce estimates the repairs and improvements cost him $23,300 and yet he claims to lack all but the most recent receipts, none of which were offered to the Court. Transcript, p. 27, 43. None of his siblings challenge the work except brother Gary Frey ("Gary") who worked on the roof and disputes the value of the payment he received. Transcript, p. 36, 50.

Simultaneously, the siblings barely contributed to the Estate debts and maintenance. The siblings did not pay any costs toward the Property except the tax bill immediately prior to filing suit. Transcript, p. 47, 52. Bruce argues, without opposition, that none of the other siblings paid the estate debts. Transcript, p. 33-34. Most important to Bruce though is the fact that he obtained the Farmers Home Administration ("FHA") loan with his parents as co-signers, leaving him on the hook for $72,000 at 11% interest once his parents passed away. Transcript, p. 31-32. Bruce posits that the monies he received in rent enabled him to pay the loan interest and now the Property's mortgage is reduced to only $15,000. Transcript, p. 34. There is no evidence that the siblings helped pay down the mortgage, and, in fact, Gary plainly asserted he would not reimburse Bruce the costs of mortgage, interest, taxes and insurance that he paid. Transcript, p. 56.

While it should be noted that Bruce had a direct interest in paying down the mortgage attached to his name, it is also notable that he paid down a significant liability upon an Estate asset, perhaps unwittingly. Yet, at the same time, he paid down the Estate liability, at least in part, with income generated from the Estate. Thus, it can be argued he used Estate generated assets to benefit himself and reimbursement to Bruce personally would effectively double dip.

9

Moreover, it is very possible that Bruce incurred thousands of dollars in repair and improvement costs. A full and proper accounting would consider those costs. Unfortunately for Bruce, his atrocious record keeping effectively precludes a proper accounting that would at least support his argument for reimbursement. The earlier *Frey* Court found no abuse of discretion due to Michael acting "in flagrant disregard for a number of procedural mandates that are intended to ensure the effective management of an estate" resulting in "a pattern of mismanagement . . . which was not likely to be rectified absent Michael's removal." *Matter of Estate of Frey*, 693 A.2d 1349, 1353 (Pa. Super. 1997). The same can be said of the present case. Bruce's twenty-five year term as Administrator CTA of the Estate has been long-delayed, abysmally mismanaged, and his continued term jeopardizes the Estate and any possible future conclusion.

### Conclusion

For the foregoing reasons, this Court ruled in favor of Amy Frey and against Bruce Frey, and removed Bruce Frey as Administrator CTA of the Estate of Malcom Frey, Jr.

The Register of Wills is directed to enter this Opinion of Record, transmit the record to the Prothonotary of the Superior Court of Pennsylvania. and to mail a copy of this Order to each party's attorney of record, or if unrepresented, to each party, pursuant to **Pa.R.C.P. 236.**

COMPLIANCE IS HEREWITH DIRECTED.

BY THE COURT:

_____
RICHARD M. HUGHES, III, J.

10