J-A06020-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF WILLA M. DUNN, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: JAMES F. DUNN | : : : : : : | No. 145 WDA 2021 |

Appeal from the Order Dated January 13, 2021
In the Court of Common Pleas of Washington County
Orphans' Court at No(s):  No. 63-02-1284

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED: April 18, 2022**

James F. Dunn (hereinafter "James") appeals the order removing him as co-executor of the estate of Willa M. Dunn.  We affirm.

Willa Dunn died testate in 2002, and an estate was opened.  In her will, she named her two sons, James and Gregory Dunn ("Gregory"), as co-executors of her estate.  Each brother was appointed as co-executor of the estate and, at various times, hired separate attorneys to assist them in their executor duties.  However, little was done by either brother to settle the estate.  Other than an inheritance tax payment of $110,000 made by Gregory in 2003, no accounting, inheritance tax return, or status report was filed on behalf of the estate, in violation of court rules and tax laws.

_____

[*] Retired Senior Judge assigned to the Superior Court.

In 2004, Gregory petitioned to remove James as co-executor, citing James's repeated failures to assist with the administration of the estate, including James's unfulfilled promises to complete the estate inventory and inheritance tax return. Gregory noted in his petition that, as a result of James's inaction, additional inheritance taxes might be owed by the estate, resulting in penalties and interest. In 2005, the orphans' court conducted a hearing on the petition. At the conclusion of the hearing, the brothers agreed to work together to auction off Willa's personal property and file an inventory and accounting. Contrary to the agreement, however, no auction occurred, no inventory or accounting was filed, and more than a decade passed with no activity on the estate.

In December 2019 and February 2020, Gregory sent letters to James regarding the estate. James did not respond to either communication. In July 2020, Gregory filed another petition to remove James as co-executor, citing James's continued inaction and failure to cooperate or perform his executor duties. Gregory alleged that James held approximately $200,000 in estate assets in an IRA account and refused to disclose any information about such assets, despite repeated requests. Gregory indicated that he wished to complete the administration of the estate but could not do so without information and cooperation from James to verify statements in an estate inventory and inheritance tax return. The orphans' court issued a rule

requiring James to show cause at a hearing why the petition to remove him should not be granted.

In September 2020, the orphans' court conducted an initial hearing on the petition but continued the hearing so that the brothers could conduct discovery, prepare evidence in support of their positions, and/or try to cooperate with each other to settle the estate. The hearing was initially continued to November 2020, but was ultimately continued to January 11, 2021. Prior to that hearing date, Gregory sent discovery requests to James regarding the IRA account and other assets. James did not respond to the requests until the morning of the continued hearing date. James did not send any discovery requests to Gregory or subpoena Gregory to attend the hearing.

At the January 11, 2021 hearing, the orphans' court heard testimony from James regarding his efforts to complete the administration of his mother's estate.[1] James indicated that he thought "that [the estate] was settled" and "we were done." N.T., 1/11/21, at 13. James stated that his relationship with Gregory was "tumultuous," and that he had not spoken to Gregory since his mother's funeral in 2002. *Id*. at 12. James admitted that he had made no effort to contact Gregory since seeing him in 2002, and claimed that he "was happy if [he] didn't have to ever talk to [Gregory] again." *Id*. at 13, 19. James further admitted that he had been unaware of the unpaid

---

[1] Gregory did not attend the hearing due to a medical emergency; however, his counsel was present and participated in the proceeding.

bills and claims against the estate, and "was waiting for somebody to ask [him] to do something" regarding the administration of the estate. *Id*. at 27, 28. Finally, James indicated that he "never thought it was necessary" to inquire about the history of an account of which he is the sole beneficiary (*i.e.*, the IRA account). *Id*. at 24. At the conclusion of the hearing, the orphans' court removed James as co-executor, and ordered him to cooperate with Gregory to settle the estate. An order to that effect was filed on January 13, 2021.[2] James filed a timely notice of appeal, and both he and the orphans' court complied with Pa.R.A.P. 1925.[3]

James raises the following issues for our review:

1. Did the [orphans'] court commit an abuse of discretion and err as a matter of law in removing . . . James . . . as a co-executor and also in so doing, without considering the conduct of . . . co-executor Gregory . . .?

2. Did the [orphans'] court commit an abuse of discretion and err as a matter of law when it based its decision to remove . . . James . . . as a co-executor with a limited and incomplete

---

[2] After James's removal as co-executor, Gregory filed both a current inventory of the estate as well as an inheritance tax return, and was taking the necessary steps to ensure that his mother's estate was settled in a timely and efficient manner. *See* Orphans' Court Opinion, 9/13/21, at 10.

[3] James filed a Rule 1925(b) concise statement listing fifteen errors committed by the orphans' court, several of which are redundant and frivolous. *See* Concise Statement, 2/24/21, at 3-6. This Court could find waiver of all issues raised in the concise statement, despite the lower court's decision to address them. *See Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 210 (Pa. Super. 2008) (holding that, if an appellant fails to set forth a sufficiency concise and coherent statement in circumstances that suggest bad faith, waiver of all issues may result).

- 4 -

record, without ever hearing any evidence or testimony from . . . Gregory . . ., so that the veracity of [James'] claims could be fully tested and [Gregory] be subjected to cross[-]examination and the [c]ourt could consider or weigh the conduct of . . . Gregory . . . in his handling of the estate?

James's *Brief* at 8.

Our standard of review of the findings of an orphans' court is as follows:

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the orphans' court's findings, our task is to ensure that the record is free from legal error and to determine if the orphans' court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Warden*, 2 A.3d 565, 571 (Pa. Super. 2010) (citations, quotations, and unnecessary capitalization omitted).

The fitness of a personal representative to serve is a matter within the exclusive jurisdiction of the orphans' court. *See* 20 Pa.C.S.A. § 711(12). Pennsylvania's Probate, Estates, and Fiduciaries Code empowers the orphans' court to remove a personal representative when the court finds that one or more of certain enumerated circumstances exists. *See id*. § 3182. Relevant to this case, removal is appropriate where the executor (1) "mismanages the estate . . . or has failed to perform any duty imposed by law;" or (2) "when, for any other reasons, the interests of the estate are likely to be jeopardized

by his continuance in office." ***Id***. § 3182(1), (5). If a party petitions for removal, the orphans' court may order the executor to appear and show cause why he should not be removed. ***Id***. § 3183. The removal of a fiduciary is a drastic action which should be taken only when the estate is endangered, and intervention is necessary to prevent further waste or mismanagement of the estate. ***See Matter of Estate of Frey***, 693 A.2d 1349, 1352 (Pa. Super. 1997). The existence of ill-feeling between the personal representatives will not, *per se*, serve as a ground for the removal of a personal representative unless it is clear that such ill-feeling endangers the estate. ***See Scientific Living, Inc. v. Hohensee***, 270 A.2d 216 224 (Pa. 1970)

James discusses his issues as if they were a single issue.[4] James argues that since 2002 he has done nothing to prevent Gregory from preparing and filing the estate inventory and inheritance tax return. James contends that, as a co-executor, Gregory had the power to direct inquiries to third parties about estate assets, including the IRA account under James's control. James vaguely asserts that he did provide information to Gregory about that account but claims that it was "never good enough." James's Brief at 19. James asserts that the fact that he could not give Gregory the "exact information" that he requested is not grounds for his removal. ***Id***. According to James, the information that Gregory sought from him regarding the IRA account is

---

[4] We note with disapproval that James was required to discuss his issues separately in his brief. ***See*** Pa.R.A.P. 2119(a).

"not available," and the court blamed James for the absence of this information. **Id**. James asserts that, to this day, neither he nor Gregory have been able to find any further information about the IRA account than the information already supplied by James. James points out that, since his removal as co-executor, Gregory was able to file an inheritance tax return without the missing information.

James argues that if there was something that needed to be done for the estate, his various counsel should have alerted him.[5] He indicates that, at the time that one of his prior counsels for the estate died, James thought that the estate was "done."

James asserts that Gregory knows where he lives and how to contact him but made no effort to do so prior to filing the 2020 petition to remove him as co-executor. James concedes that his relationship with Gregory is "tumultuous," but argues that animosity between co-executors is not a basis for removal. He further argues that he gave no indication to the court that he could not work with Gregory to finalize the estate.

Finally, James contends that he assisted with the inheritance tax payment of $110,000 in 2003, and that the orphans' court unfairly awarded Gregory sole credit for making that payment. James asserts that Gregory is

_____

[5] We glean from the record that James hired a number of attorneys to counsel him with respect to the administration of his mother's estate, and that, at some point not clear from the record, one such attorney passed away.

equally at fault for permitting the estate to languish for so many years, and the court should have required Gregory to testify at the 2021 hearing regarding his own inaction. In James's view, the orphans' court blamed him for everything that was deficient about the estate, while crediting Gregory for everything positive about the estate.

The orphans' court considered James's issues and determined that they lacked merit.[6] The court found that James did not take the threshold steps to ensure the effective administration of his mother's estate in the nineteen years he served as co-executor. The orphans' court pointed to James's testimony at the 2021 hearing wherein he conceded that he (1) "thought we were done" with the administration of the estate; (2) was unaware of the unpaid bills and claims against the estate; (3) was "waiting for somebody to ask [him] to do something" regarding the administration of the estate; and (4) "never thought it was necessary" to inquire about the history of an account of which he is the

---

[6] The orphans' court questioned whether James had standing to appeal the order removing him as co-executor. Pursuant to Pa.R.A.P. 501, "any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom." To demonstrate that he or she is aggrieved, an individual must establish a substantial, direct and immediate interest in the proceeding. *See In re Miller*, 27 A.3d 987, 992-93 (Pa. 2011). Here, as a co-executor, James was a fiduciary of the estate. James is also a beneficiary of the estate. *See In re Estate of Patrick*, 409 A.2d 388, 390 n.2 (Pa. 1979) (noting that the executors of the estate had standing to appeal the order of the orphans' court since they were parties aggrieved in their capacity as beneficiaries of the estate). Accordingly, we conclude that he is substantially, directly and immediately aggrieved by the order removing him as co-executor.

sole beneficiary (*i.e.*, the IRA account). Orphans' Court Opinion, 9/13/21, at 10. The orphans' court determined that Gregory sent numerous requests for information to which James did not respond. *Id*. at 10. In the court's opinion, James exhibited "a pattern of mismanagement not likely rectified without [his] removal." *Id*. The court determined that James was "acting in complete disregard to his fiduciary duty to the estate and made no effort to protect estate interests since his appointment in 2002." *Id*. at 11.

We discern no abuse of discretion by the orphans' court in determining that James failed to perform the duties imposed on him by law as co-executor of his mother's estate. *See* 20 Pa.C.S.A. § 3182(1). Although James claimed that he and Gregory jointly made the inheritance tax payment of $110,000 in 2003, he points to no evidence in the record which shows that he assisted with that payment. Moreover, James did not identify any other action that he has taken since 2002 to administer his mother's estate. James fails to acknowledge his deficient stewardship and instead tries to redirect our attention to Gregory's inaction since 2002. However, simply pointing to Gregory's inaction does not excuse his own. On the record before us, it is clear that since 2002, James made no effort to determine what responsibilities he had as an executor or to discharge those responsibilities. *See Estate of Frey*, 693 A.2d at 1352-53 (affirming the removal of executor who was unaware of his responsibilities and exhibited a pattern of mismanagement not likely to be rectified without his removal).

We further conclude that the orphans' court did not abuse its discretion in finding that the interests of the estate were likely to be jeopardized if James were to continue to serve as co-executor. *See id*. § 3182(a). The court was presented with testimony and evidence that Gregory sent correspondence to James in December 2019 and February 2020, and that James did not respond to either communication. Further, at the 2021 hearing, James admitted that he and Gregory had a "tumultuous" relationship, that he had not spoken to Gregory since their mother's funeral in 2002, and that he would be happy "if I didn't have to ever talk to him again." N.T., 1/11/21, at 12, 13, 19. Given that the brothers were unable to work together over the nineteen-year history of the estate and that Gregory indicated a desire to complete the administration of his mother's estate, we cannot conclude that the court abused its discretion in determining that if James continued to serve as co-executor, the interests of the estate would not be further jeopardized.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2022

- 10 -